**In the Matter of the Extradition of Gunther LEHMING.**

**Civil Action No. 96–262–MPT.**

United States District Court, D. Delaware.

Dec. 18, 1996.

Edmund D. Lyons, Jr., Edmund Daniel Lyons, Attorneys at Law, Wilmington, Delaware, for Gunther Lehming.

Gregory M. Sleet, U.S. Attorney, Paulette K. Nash, Assistant U.S. Attorney, Wilmington, Delaware, for U.S.

## OPINION

TROSTLE, United States Magistrate Judge.

The Federal Republic of Germany ("Germany") seeks the extradition of Gunther Lehming pursuant to the governing treaty between the United States and Germany and 18 U.S.C. § 3184, in order to prosecute him for offenses related to the management and subsequent bankruptcy of a company named Depro Keramische Buntdrucke Gesellschaft mit beschrankter Haftung (hereinafter "Depro GmbH").

In support of its request, the United States Government, acting through the United States Attorney, submitted a criminal complaint accompanied by a Warrant of Arrest for Gunther Lehming on allegations that Lehming, while director of Depro GmbH, absconded with or transferred assets of the bankrupt's estate, delayed filing of a bankruptcy petition, and committed bankruptcy fraud.[1]

## BACKGROUND

Mr. Gunther Lehming was arrested on May 14, 1996 pursuant to a complaint and warrant seeking his extradition to Germany. On May 16, 1996, Lehming was released on bail pending the completion of extradition proceedings. Pursuant to 18 U.S.C. § 3184, this Court held an extradition hearing on

1. Specifically, the Warrant of Arrest alleges Lehming committed the following offenses in violation of paragraph 283 of the German Penal Code:

 1. secretly removed or concealed component parts of his assets, which belong to the bankrupt's estate in the event of adjudication of bankruptcy, or having destroyed, damaged or made them useless, in a way contradictory to the requirements of proper business conduct;

 2. of having feigned the rights of others or acknowledged fabricated rights;

 3. of having failed to keep accounting books, which he is legally obligated to keep, or of having kept or amended them in such a way that the overall view of his asset and liability situation was rendered more difficult;

 4. of having prepared the balance sheets in a way contrary to the commercial law, so that the overall view of his asset and liability situation was rendered more difficult;

 5. of having reduced his asset and liability situation in another way, which grossly contradicts the requirements of proper business conduct, or of having concealed or disguised his actual business circumstances; and also

 6. in his capacity as registered director, of having failed to file a bankruptcy petition or for judicial composition proceedings while being insolvent or excessively indebted, contrary to paragraph 64, subparagraph 1 of the private law on private limited companies.

Government Ex. 2 at B8–B9.

September 17, 1996.[2] This hearing was continued on September 20, 1996 and again on October 31, 1996. At the September 17, 1996 hearing, the Government submitted a number of documents which were received into evidence. These documents include an affidavit of Thomas A. Johnson, Deputy Assistant Legal Advisor in the Office of the Legal Adviser for the Department of State, Washington, D.C. and a copy of the applicable treaty between the United States and Germany; documentary evidence supporting the request for extradition, including a Warrant of Arrest from the Saarbrucken District Court dated November 10, 1995, an order from the Saarbrucken Local Court, dated September 22, 1995, regarding the commencement of bankruptcy proceedings which involve Depro GmbH, a transcript of statements offered by Mr. Udo Groner, trustee in bankruptcy, at preliminary criminal proceedings, and a copy of the applicable statutory provisions of the German Penal Code. Lehming did not object to the admissibility or authenticity of these documents or the attached certified translations. On behalf of Lehming, a report created by bankruptcy trustee Groner was submitted on September 20, 1996 in an effort to explain the statements made by Groner in the Government's submissions supporting extradition. This report was accepted by the Court on October 31, 1996 pending a determination of admissibility. At the October 31, 1996 hearing, the Government did not dispute the authenticity or translation of this report, but objected to its admissibility in this proceeding on the grounds of relevance.

## DISCUSSION

■ An extradition treaty creates in a foreign government the right to demand and obtain extradition of an accused criminal. *Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986) (citations omitted). Absent a statute or treaty which authorizes extradition, the federal government lacks the necessary authority to surrender an accused to a foreign government. *Id.* (citations omitted). In making a determination of the propriety of extradition, this Court is to construe an ex-

tradition treaty liberally "to achieve [the] purpose of providing for the surrender of fugitives for trial in the requesting country." *U.S. v. Cancino–Perez*, 151 F.R.D. 521, 523 (E.D.N.Y.1993), *citing Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936).

Lehming opposes extradition on several bases. First, the constitutionality of 18 U.S.C. §§ 3184 and 3186 is challenged on the ground that the statutes violate the separation of powers mandated by the United States Constitution. Second, because the German government seeks Lehming's extradition to further investigate the alleged commission of a crime, as opposed to requesting extradition to prosecute him as required by the Treaty, extradition should be denied. Third, the charges do not satisfy the dual criminality requirement between the offenses charged in the United States and Germany, and finally, the evidence does not demonstrate the requisite intent necessary for bankruptcy fraud, and therefore fails to satisfy the probable cause requisite for extradition. These contentions will be addressed below.

### A. Constitutionality of 18 U.S.C. § 3184 and § 3186

■ Lehming first contends that the extradition statutes are unconstitutional because they violate the separation of powers mandated by the United States Constitution. Specifically, Lehming argues that allowing the Secretary of State ultimate approval of a judicial determination regarding extradition infringes upon the separation of powers doctrine. D.I. 28.

Under 18 U.S.C. § 3184, an extradition proceeding is designed to provide for limited judicial review of the executive branch's authority to extradite an individual sought pursuant to a treaty. The statute requires the government to submit a formal complaint to an extradition officer setting forth the legal and factual bases for extradition. *Lo Duca v. United States*, 93 F.3d 1100, 1103 (2nd Cir.1996). The extradition officer, typically a federal magistrate judge, holds a hearing to

---

**2.** The parties consented in writing to the jurisdiction of the magistrate judge. Therefore, this

Memorandum Opinion and Order fall within 28 U.S.C. § 636(c).

"hear and consider 'evidence of criminality.'" *Id.* If the evidence presented satisfies the treaty between the United States and the foreign country, the magistrate judge issues a certificate of extradition to the Secretary of State. *Id.* The Secretary of State then makes the final determination of whether or not to extradite the fugitive. *Id.* Because the Executive Branch, through the Secretary of State, retains plenary authority to decide whether or not to extradite regardless of the judicial determination of extradition, the separation of powers doctrine is implicated.

■ The separation of powers principle is based on the belief that liberty can only be preserved if governmental powers are separated into three coordinate branches of government. *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 659, 102 L.Ed.2d 714 (1989). However "the Framers did not require—and indeed rejected—the notion that the three branches must be entirely separate and distinct." *Id.* The proper functioning of our government requires "a degree of overlapping responsibility, a duty of interdependence as well as independence the absence of which 'would preclude the establishment of a Nation capable of governing itself effectively.'" *Id.* at 381, 109 S.Ct. at 659, *quoting Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). The concern when analyzing an alleged violation of the separation of powers is not an overlap of responsibility, but rather "the encroachment and aggrandizement of one branch at the expense of another." *Matter of Extradition of Marzook,* 924 F.Supp. 565, 571 (S.D.N.Y.1996). In the context of issues which specifically involve the Judicial Branch, the Supreme Court expressed grave concern for two dangers, "first, that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches,' and, second, that no provision of law 'impermissibly threatens the institutional integrity of the Judicial Branch.'" *Id.* at 383, 109 S.Ct. at 660 (citations omitted).

This Court concludes, upon a review of the applicable Treaty and statutes, that the federal statutes are constitutional. Although a contrary position was taken in *Lobue v. Christopher,* 893 F.Supp. 65 (D.D.C.1995), *vacated on jurisdictional grounds,* 82 F.3d 1081 (D.C.Cir.1996) (vacated for lack of jurisdiction and ordering dismissal), the balance of federal court decisions support the conclusion that the statutes are constitutional. *See Lo Duca,* 93 F.3d at 1103–1112; *In the Matter of Extradition of Lui Kin–Hong, a/k/a Jerry Lui,* 939 F.Supp. 934, 962 (D.Mass. 1996); *Sandhu v. Bransom,* 932 F.Supp. 822, 826 (N.D.Tex.1996); *Marzook,* 924 F.Supp. at 570–71; *Matter of Extradition of Lin,* 915 F.Supp. 206, 211–15 (D.Guam 1995); *Matter of Extradition of Sutton,* 905 F.Supp. 631, 636–37 (E.D.Mo.1995); *Matter of Extradition of Sidali,* 899 F.Supp. 1342, 1350 (D.N.J. 1995).

## B. Extradition for Investigatory Purposes

■ The Extradition Treaty[3] provides the framework to determine the appropriateness of extradition. The purposes for extradition are broader than solely for the purposes of a criminal prosecution.[4] Specifically, Article 1 obligates a party to the Treaty to extradite "persons found in the territory of one of the Contracting Parties who have been *charged with* an offense ...". Government Ex. 3 at C19 (emphasis added). Article 2 of the Extradition Treaty describes the "Extraditable Offenses" for which a fugitive may be extradited. This Article states:

(1) Extraditable offenses under this Treaty are offenses which are punishable under the laws of both Contracting Parties. In determining what is an extraditable offense it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offense or denominate an offense by the

---

3. Treaty of Extradition, June 20, 1978, United States–Federal Republic of Germany, 32 U.S.T. 1485, T.I.A.S. No. 9785.

4. The Government argues that extradition serves many purposes, including retaining custody of a

fugitive for prosecution and returning a fugitive to a country who has already been convicted and sentenced. D.I. 27 at 3. The Treaty specifically provides for these circumstances in Article 2(2)(b), *supra.*

same terminology, or whether dual criminality follows from Federal, State or Laender laws. In particular, dual criminality may include offenses based upon participation in an association whose aims and activities include the commission of extraditable offenses, such as a criminal society under the laws of the Federal Republic of Germany or an association involved in racketeering or criminal enterprise under the laws of the United States.

(2) Extradition shall be granted in respect of an extraditable offense:

a) *For prosecution,* if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a maximum period exceeding one year, or

b) For the enforcement of a penalty or a detention order, if the duration of the penalty or detention order still to be served, or when, in the aggregate, several such penalties or detention orders still to be served, amount to at least six months.

(3) Subject to the conditions set out in paragraphs (1) and (2), extradition shall also be granted:

a) For attempts to commit, conspiracy to commit, or participation in, an extraditable offense;

b) For any extraditable offense when, only for the purpose of granting jurisdiction to the United States Government, transportation, transmission of persons or property, the use of the mails or other means of communication or use of other means of carrying out interstate or foreign commerce is also an element of the specific offense.

(4) When extradition has been granted in respect of an extraditable offense, it shall also be granted in respect of any other extraditable offense which would otherwise not be extraditable only by reason of the operation of paragraph (2).

Government Ex. 3 at C20, C21 (as amended from the Supplemental Treaty to the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, Article 1(a), Government Ex. 3 at C11) (emphasis added).

In order to determine whether a fugitive is subject to extradition, this Court must analyze the language of the treaty, for it creates the right of the foreign sovereign to obtain extradition. *Quinn,* 783 F.2d at 782. The Treaty provides that certain offenses are extraditable, and this Court must conclude the fugitive is extraditable based on the requirements set forth therein. Based on the representations by the Government on behalf of the German authorities, Lehming is subject to Article 1 and Article 2(2)(a).[5] This Court may review all German documents submitted in support of extradition to evidence an *intent* on behalf of the requesting country to prosecute a fugitive. *Emami,* 834 F.2d at 1449. Therefore, an examination shall occur of the records admitted into evidence to determine if there is evidence of Germany's intent to prosecute Lehming.

In evidence is a Warrant of Arrest issued by the Saarbrucken District Court on November 10, 1995. Government Ex. 2 at B8–B11. According to this document, Lehming is requested to be "brought to confinement pending further investigation." Government Ex. 2 at B8. It lists the crimes that Lehming is "strongly suspected of committing" and seeks his arrest "because there is a danger that the accused will avoid criminal proceedings." Government Ex. 2 at B11.

5. The Government directs this Court to Article 1(1) which requires extradition of persons *"charged* with an offense or *are wanted* by the other Contracting Party for the enforcement of a judicially pronounced penalty or *detention order."* D.I. 27 at 2. (emphasis in original). However, Article 1(1) is "subject to the provisions described in" the Treaty. This Court interprets the statement contained in the Treaty to address two situations: those persons charged with committing an offense and those wanted for the enforcement of a judicially pronounced penalty or detention order. Article 2(2)(b) is qualified in that extradition is proper when the "duration of the penalty or detention order still to be served, or when, in the aggregate, several such penalties or detention orders still to be served, *amount to at least six months."* Government Ex. 3 at C21. The documentation provided by the German government does not identify any length of time which Mr. Lehming has failed to serve or must serve as a result of a penalty or detention order.

The document refers to an "investigating public prosecutor" indicating the existence of a continuing inquiry into alleged criminal activity. It also enumerates six crimes which Lehming has been "accused" of committing. The Warrant of Arrest demonstrates an awareness of criminal activity, an ongoing investigation, a concern that Lehming is a risk of flight and an indication that he has been formally accused of committing several crimes. This document evidences an intention, on behalf of the German authorities, to prosecute Lehming.

Also in evidence is a letter from Prosecutor Norbert Mertes dated May 22, 1996, which describes the initiation of preliminary proceedings against Gunther Lehming and the issuance of a Warrant of Arrest. Government Ex. 2 at B30. The document provides that "[t]he offenses [sic] with which the accused is charged—on the grounds of which investigations are being carried out—and which are contained in the warrant of arrest are all as yet not statute-barred." The document plainly states that Lehming has been charged with committing crimes and that an investigation is ongoing.[6] This letter also evidences an intention on behalf of the German government to prosecute Lehming.

Lehming contends that extradition is improper when a fugitive is sought "pending further investigation." D.I. 25 at 4. In support of this argument, Lehming relies on

Article 2(2)(a) of the Treaty which provides that extradition shall be granted for an extraditable offense if the object of extradition is the *prosecution* of an alleged offense deemed punishable under the laws of both contracting governments. Furthermore, Lehming suggests that the "paucity of 'evidence' " given in support of extradition illustrates the inability of Germany to presently prosecute him for the offenses he allegedly committed. D.I. 25 at 4.

A similar argument was rejected by the Ninth Circuit in *Emami v. United States District Court for the Northern District of California,* 834 F.2d 1444, 1449 (9th Cir. 1987). In *Emami,* the fugitive claimed that under paragraph 112 of the German Code of Criminal Procedure, the German government sought only to assess the viability of a criminal prosecution, and because the statute did not evidence a clear intent to prosecute, a recommendation for extradition should not be granted.[7] *Id.* In rejecting Emami's argument, the Ninth Circuit held that an intent to prosecute was found in two other documents which accompanied Germany's submission: Germany's request for the fugitive's provisional arrest and Germany's request for extradition. *Id.* Because these two requests specifically stated that the fugitive was wanted for prosecution, a clear intention to prosecute existed which satisfied the requirement of Article 2(2)(a).[8] *Id.*

---

**6.** The Court has also received a translation of a four page statement made to Public Prosecutor Mertes by Udo Groner which discusses his findings and conclusions regarding the financial status of Depro GmbH. Government Ex. 2 at B18–B21. The document is part of "Preliminary Proceedings" against Gunther Lehming, and discusses Lehming's alleged involvement in the management and operations of Depro GmbH. This document does not directly assist the Court's inquiry in determining if Lehming is sought for prosecution, but rather confirms the existence of an ongoing criminal investigation into the bankruptcy of Depro GmbH and Lehming's suspected involvement therein.

**7.** Emami's argument relied upon paragraph 112 of the German Code of Criminal Procedure which provides, in pertinent part

Requirements for Arrest *Pending Further Investigation:* Reasons for Arrest Subparagraph II: A reason for arrest exists when, owing to certain facts

2. On assessing the circumstance of the individual case, there is a danger that the defendant will evade the penal proceedings (danger of absconding).

Government's Ex. 2 at B37 (emphasis added). Emami claimed that *the statute* provides for arrest when Germany suspects a "defendant" of a crime and fears that party may attempt to flee the jurisdiction (which Emami did). The Ninth Circuit, in rejecting this argument, declined to analyze the foreign statute and decide questions of German criminal procedure. *Emami,* 834 F.2d at 1449. As stated previously, counsel for Lehming relies upon the statements made in the Warrant of Arrest. Government's Ex. 2 at B8.

**8.** *Emami* is distinguishable from the case *sub judice.* Emami was arrested in Germany prior to extradition and provided the prosecutor "a partial confession during interrogation." *Emami,* 834 F.2d at 1447. He was released on his own recognizance, failed to appear at a scheduled hearing, and subsequently fled to the United States. *Id.* Furthermore, in *Emami* the German

The United States Attorney's Office has presented sufficient information through the submission of the Warrant of Arrest (and the statements contained therein) and the May 22, 1996 letter from Prosecutor Mertes which demonstrates an intent to prosecute Lehming for the offenses charged.[9] Therefore, sufficient evidence of an intent to prosecute exists making extradition proper under these circumstances.

## C. Dual Criminality

■ The Treaty requires that an offense for which the fugitive is sought by the foreign country must also be an offense which is punishable under the laws of the United States, thus, creating a requirement of "dual criminality." As stated by the Supreme Court, "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act charged is criminal* in both jurisdictions." *Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470–71, 66 L.Ed. 956 (1922) (emphasis added); *also see Kaiser,* 827 F.Supp. at 835; *United States v. Sensi,* 879 F.2d 888 (D.C.Cir.1989). In addressing the require-

ment of dual criminality, the relevant portion of the Treaty reads as follows

Extraditable offenses under the treaty are *offenses which are punishable under the laws of both Contracting Parties.* In determining what is an extraditable offense it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offense or denominate an offense by the same terminology, or whether dual criminality follows from Federal, State or Laender laws.

Government Ex. 3 at C11 (emphasis added). Therefore, so long as the acts charged in Germany constitute the commission of a crime in the United States, dual criminality is satisfied.

■ The German prosecutor charged Lehming with offenses including bankruptcy fraud and failure to timely file a bankruptcy petition. Lehming disputes the requirement of dual criminality by arguing that he cannot be extradited for the offense of failure to timely file a bankruptcy petition because it is not a crime in the United States. D.I. 25 at 4–5. With regard to the charge of bankruptcy fraud, Lehming admits that 18 U.S.C. § 152 [10] prohibits bankruptcy fraud in the

government provided additional documentation which supported the prosecution requirement of Article 2(2)(a). *Id.* In this matter, the Government has not presented any evidence that Lehming has either been arrested or questioned regarding his involvement in the bankruptcy of Depro GmbH. In addition, Lehming does not rely upon the language of § 112 of the German Code of Criminal Procedure. Instead, Lehming's attorney solely addressed the language of the Warrant of Arrest—"[Lehming] is to be brought to confinement pending further investigation." Government Ex. 2 at B8. The Government has not provided any evidence which literally states that Lehming is sought for "prosecution."

**9.** The Government also relies upon *Kaiser v. Rutherford,* 827 F.Supp. 832 (D.D.C.1993) for the proposition that a fugitive need not be formally charged with an offense to be subject to extradition. This Court does not disagree with this conclusion, but notes that *Kaiser* is distinguishable since Lehming does not claim that he must be *formally charged* with an offense, but rather that there is no evidence of intent to prosecute as required by the Treaty.

**10.** Title 18, United States Code § 152 provides:

**Concealment of assets; false oaths and claims; bribery**

A person who—

(1) knowingly and fraudulently conceals from a custodian, trustee, Marshal or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;

(2) knowingly and fraudulently makes a false oath or account in or. in relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate, verification or statement under penalty of perjury as permitted under § 1746 of title 28, in or in relation to any case under title 11;

(4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;

(5) knowingly and fraudulently receives any material amount of property from debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11;

(6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or

United States, and conceded at oral argument that certain bankruptcy fraud offenses alleged "in fact successfully satisfy the dual criminality situation." D.I. 26 at 30, I. 11–15.

The Warrant of Arrest charges Lehming with secretly removing or concealing assets which belonged to the bankrupt corporation in violation of paragraph 283, sub-item I of the German Penal Code. Specifically, it alleges that "[Gunther Lehming] transported away, or arranged to have transported away" a printing press, folders containing color samples, a repro-system, computer disk cabinets, and semi-finished goods valued at approximately 338,000 German Marks. Government Ex. 2 at B8–B9. Lehming is also accused of executing contracts on the account of Depro GmbH to fictitiously increase the company's liabilities, creating fictitious invoices, and transporting away accounting records and business data to conceal arrangements with other companies. This activity can be characterized as: (1) knowing and fraudulent concealment of property from creditors or bankruptcy trustees (in violation of 18 U.S.C. § 152(1)); (2) in a personal capacity or as an officer or agent of Depro GmbH, knowingly and fraudulently transfer-

ring or concealing property of the corporation (in violation of 18 U.S.C. § 152(7)); and (3) knowing and fraudulent concealment and falsification or having made false entries in books, documents, records and papers relating to Depro GmbH (in violation of 18 U.S.C. § 152(8)).[11]

Based upon the representations in the Warrant of Arrest and the aforementioned admission by counsel for Lehming, this Court concludes the requirement of dual criminality is satisfied. The Treaty does not require that *all* offenses alleged by the foreign sovereign must satisfy the dual criminality provision. In addition, respondent's counsel has not provided, nor has this Court been able to locate, any authority which supports the argument that all offenses alleged must satisfy the dual criminality requirement for extradition.[12] Although this Court could not recommend extradition based solely upon the alleged failure to file a bankruptcy petition, other crimes alleged satisfy the dual criminality requirement.

**D. Probable Cause**

■ Pursuant to 18 U.S.C. § 3184, extradition hearings are in the nature of a prelimi-

---

property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11; (7) in a personal capacity or as an agent or officer of any person or corporation in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; (8) after the filing of case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of the debtor; or (9) after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor, shall be fined not more than $5,000, imprisoned not more than 5 years, or both.

11. Although the Warrant of Arrest does not characterize Lehming's behavior as "fraudulent," it

indicates Lehming fictitiously created invoices and contracts, concealed relationships between the various corporations at issue, and fabricated invoices for semi-finished products which were later canceled once a shipment was made. Government Ex. 2 at B9–B11. These allegations indicate voluntary, intentional and fraudulent behavior.

12. The German government may be precluded from prosecuting Lehming for failure to file a bankruptcy petition upon extradition to Germany. However, this speculation is based upon precedent in the United States. Pursuant to certain extradition treaties, fugitives who have fled the United States and are subsequently arrested and returned for prosecution may only be subject to prosecution for offenses which satisfy the dual criminality requirement. *See United States v. Garcia,* 37 F.3d 1359 (9th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 562 (1995) (under doctrine of dual criminality, defendant who had fled the United States could not be extradited or charged on the basis of 20 of 26 crimes alleged against him where 20 counts were not considered crimes in Luxembourg). This Court does not express an opinion whether the Treaty at issue provides similar protection or whether Germany treats similarly situated individuals in a like manner.

nary hearing where the magistrate judge "need only determine if there is probable cause which justifies the holding of an accused to answer for a charge." *Republic of France v. Moghadam,* 617 F.Supp. 777, 781 (D.C.Cal.1985), *citing Charlton v. Kelly,* 229 U.S. 447, 460, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913); *Sayne v. Shipley,* 418 F.2d 679, 685 (5th Cir.1969), *cert. denied* 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970). Probable cause is established when the evidence presented supports a reasonable belief that a fugitive committed the charged offenses. *Marzook,* 924 F.Supp. at 579.

■ In order to determine probable cause, a judge is to review the evidence presented and make an independent determination that the accused committed the crimes alleged. As stated by the Supreme Court,

> [t]he commissioner must judge for himself the persuasiveness of the *facts* relied upon by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime.

*Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958) (emphasis added). This independent review allows a magistrate to perform a " 'neutral and detached' function and not serve merely as a rubber stamp...." *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964).

■ To establish probable cause in an extradition proceeding, a court may exercise its discretion as to the quantity of evidence it will receive. *Moghadam,* 617 F.Supp. at 781, *citing Charlton,* 229 U.S. at 461, 33 S.Ct. at 949–50. The admissibility of evidence presented by the Government and admitted by the court is governed specifically by Title 18, U.S.C. § 3190, which provides:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing *for all the purposes of such hearing* if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Title 18 U.S.C. § 3190 (emphasis added).

The purpose of § 3190 is to afford the Government an efficient method of satisfying obligations under extradition treaties and supply a framework through which the Government can introduce evidence to efficiently extradite fugitives. *United States v. Taitz,* 134 F.R.D. 288, 291 (S.D.Cal.1991), *citing Oteiza v. Jacobus,* 136 U.S. 330, 10 S.Ct. 1031, 34 L.Ed. 464 (1890). Based upon the aforementioned statute, this Court may examine all of the documents admitted into evidence, including the Warrant of Arrest, to make a probable cause determination.[13]

■ A fugitive is permitted to introduce evidence which rebuts the finding of probable cause, but this proffer is limited solely to evidence explaining the circumstances before a court. Explanatory evidence has been defined as "reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause ... the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits." *Matter of Sindona,* 450 F.Supp. 672, 685 (S.D.N.Y.1978). This Court shall exclude evidence which is proffered to contradict testimony, challenge the credibility of witnesses or establish a defense to the crimes alleged. *Id.* at 682, *also see Collins,* 259 U.S. 309, 315–16, 42 S.Ct. 469, 471–72 (admissible evidence is that which might explain ambiguities or doubtful ele-

---

**13.** Lehming argues that this Court cannot utilize the Warrant of Arrest to reach a determination of probable cause. D.I. 32. However, § 3190 specifically allows the Court to do so. The statute provides "warrants ... offered into evidence ... shall be received and admitted ... for *all purposes* of such hearing...." An unrefuted purpose of the extradition hearing is to evaluate probable cause. Therefore, while the warrant of arrest in this case may not be the sole "document to which one looks to determine the issue of probable cause," (D.I. 32 at 1), this Court can and will consider it in conjunction with other properly admitted evidence.

ments of the prima facie case); *In Re Okeke*, No. 96–7019P–01, 1996 WL 622213 (D.N.J. 1996) (fugitive is limited to explanatory evidence that offers a benign explanation for the evidence presented against them); *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.), *cert. denied* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978).

 During the extradition hearings, the Government offered into evidence a Warrant of Arrest; a document representing the initiation of bankruptcy proceedings concerning Depro GmbH in Saarbrucken Local Court (Reference No. 31–N–234–95) dated September 22, 1995; a transcribed sworn statement by Udo Groner, trustee in bankruptcy, regarding Lehming's alleged involvement in the pending bankruptcy dated April 13, 1996; and a letter from a German prosecutor discussing preliminary proceedings which have commenced against Lehming dated May 22, 1996. Government Ex. 2 at B8, B13, B18–B21, and B30. These items were admitted into evidence without objection. Lehming offered a translation of a report created by Udo Groner in relation to the bankruptcy of Depro GmbH, Saarbrucken Bankruptcy Court File Number 31N234/95 dated December 7, 1995. Lehming Ex. 1. The Government has objected to the admissibility of this report on relevance grounds. After a review of this report, the Court concludes Lehming's submission is admissible. It is not offered for an improper purpose, as it does not contradict evidence or testimony, challenge the credibility or veracity of a witness or establish a defense to the crimes alleged. It is a report, created by a affiant relied upon in the documents submitted by the Government who is directly aware of the factual circumstances surrounding the bankruptcy of Depro GmbH and the alleged criminal involvement of Lehming.[14] However, the admissibility of this report is limited to clarifying Groner's affidavit of April 13, 1996.

Lehming argues that the Government's evidence does not support a finding of probable cause. Specifically, Lehming alleges the evidence does not show he acted with the requi-

site fraudulent intent to commit bankruptcy fraud. D.I. 25 at 5. In addition, he contends that even if the Court concludes that the Groner affidavit supports a charge of bankruptcy fraud, it does not implicate him personally in the demise of Depro GmbH. Therefore, extradition is improper.

 During the prosecution of bankruptcy fraud, the Government is required to provide evidence that the defendant acted in a knowing and fraudulent manner. 18 U.S.C. § 152. However, the Government is not required to provide direct proof of knowing illegal conduct. "The statutory requirement that the underlying acts be performed 'knowingly' requires only that the act be voluntary and intentional and *not* that the person *knows he is breaking the law." United States v. Zehrbach*, 47 F.3d 1252, 1261 (3rd Cir.1995) (emphasis added). A defendant's good faith belief in the lawfulness of his conduct is not a defense. *Id.* at 1262. Fraudulent intent, under American law, may be proven through circumstantial evidence. *United States v. Goodstein*, 883 F.2d 1362, 1370 (7th Cir.1989) (fraudulent intent was proven when debtor, who filed for Chapter 11 protection, subsequently transferred inventory, equipment and an equitable interest in one company to another in an attempt to circumvent bankruptcy laws), *citing In Re May*, 12 B.R. 618, 626 (N.D.Fla.1980); *also see United States v. Ellis*, 50 F.3d 419, 426 (7th Cir.1995) (defendant's failure to completely and accurately answer bankruptcy petition and loan applications by omitting to mention prior bankruptcy filings was circumstantial evidence sufficient to prove knowing and fraudulent acts). To satisfy the fraudulent intent requirement, the Government is required to provide evidence that Lehming transferred or concealed property or created false entries in books, documents, records and papers in an effort to benefit himself or mislead creditors, the bankruptcy trustees, or the court. This Court, therefore, will review the evidence to determine whether the allegations regarding Lehming's behavior rise to the level of fraudulent conduct.

14. The Court is cognizant of the fact that the report submitted by Lehming was dated December 7, 1995, whereas the statement of Udo Gron-er offered into evidence by the United States Attorney was dated April 13, 1996.

Of the evidence submitted by the Government, two documents are relevant to this Court's probable cause determination.[15] These are the Warrant of Arrest and a translation of an affidavit by Udo Groner, trustee in bankruptcy for Depro GmbH. The Warrant of Arrest mimics the language of the German penal code in describing the crimes alleged and also provides some detail to the charges.[16] The warrant advises that Lehming "is strongly suspected of committing these offenses, on the grounds of several witness statements, in particular by the witnesses Kraut, Steiner, Oesterling, the trustee in bankruptcy Groner, Detective Chief Inspector Krauer, as well as on the basis of documents (accounting records, invoices, and other)." Government Ex. 2 at B11. While this document provides insight into the alleged crimes and identifies the German government's investigatory team and documentary evidence, it does not provide sufficient factual detail which allows this Court to conclude that probable cause exists. Therefore, the Court will view the Warrant of Arrest in conjunction with the affidavit to flesh out any facts which support the crimes charged.

Groner's statement identifies Gunther Lehming as the director of Depro GmbH. Government Ex. 2 at B18. It also discusses fraudulent activity—including removing corporate assets (machinery, semi-finished goods) prior to insolvency—but fails to personally implicate Lehming as knowing, directing or participating therein.[17] In fact,

the affidavit contains one statement which personally implicates Lehming in alleged criminal activity.[18] Groner states "I know that the defendant, together with his son Walter Lehming, concluded contracts on the account of the company Depro and in favor of other businesses belonging to the family's group of companies." Government Ex. 2 at B19. The Warrant of Arrest discusses similar contracts, specifically:

together with Walter Lehming, he produced contracts on the account of Depro GmbH and in favor [sic] of other businesses in the group of companies to fictitiously increase liabilities, these contracts being:

a. agreement between Elkap and Depro GmbH dated 31st April 1994,

b. agreement between Elkap and Depro GmbH dated 25th February 1994,

c. contract between Serical and Depro GmbH dated 28th June 1993,

d. contract between Depro–Serical USA and Depro GmbH dated 28th June 1993,

e. Sub-licensing agreement between Serical and Depro GmbH dated 1st April 1991.

Government Ex. at B9–B10.

Groner's statements suggest that Lehming acted to the detriment of Depro GmbH by constructing contracts with other companies in which Lehming holds a proprietary interest.[19] Although Groner concludes these com-

---

**15.** As will be discussed *supra,* Lehming's submission provides additional facts to the claims made in the Government's documentation.

**16.** For example, when discussing the secret removal of assets belonging to the bankrupt corporation, the Warrant of Arrest states that Lehming transported away, or arranged to have transported away a number of specified assets (e.g. a printing press) in violation of the German penal code.

**17.** The Government contends that "it is clear that [Groner] believes Gunther Lehming committed the acts described in his three page statement." D.I. 27 at 4. While there may be probable cause to believe actions occurred which violate the criminal statutes of both the United States and Germany, Groner does not specifically identify Lehming as the person responsible for these offenses.

**18.** Groner's testimony also states that "despite being obviously in excessive debt since 31st March 1994, the defendant Gunther Lehming failed to initiate proceedings for bankruptcy." While there may exist sufficient probable cause to support an allegation that Lehming committed the crime of failure to file a bankruptcy petition, the lack of dual criminality with regard to this charge precludes extraditing Lehming on this basis. However, this assertion does support fraudulent intent.

**19.** The three companies to which these contracts pertain are identified in the Warrant of Arrest as Elkap, Serical, and Depro–Serical U.S.A. According to Groner's report, Depro–Serical U.S.A. is owned by Gunther and Ute Lehming. Serical is a corporation owned jointly by Gunther Lehming and Depro–Serical U.S.A. It is managed by Walter Lehming. Finally, Elkap is owned jointly by Gunther Lehming and Depor–Serical U.S.A.

panies benefitted from the aforementioned contracts, this court cannot reach the same determination based upon the evidence presented. The accusations in the Warrant of Arrest and Groner's affidavit do not contain sufficient factual information to support a criminal charge. From these submissions, the Court cannot identify the subject matter of the contracts, the parties who negotiated or authorized the agreements, the injury which Depro GmbH suffered as a result of the contracts, or Gunther Lehming's personal involvement therein. Furthermore, the Court cannot identify the source for Groner's conclusion that Lehming committed a crime, or set forth a sufficient factual basis upon which a finding of probable cause could be made. The information submitted amounts to unsupported conclusory statements which are insufficient to satisfy probable cause.

■ Federal courts have recognized that conclusory statements do not satisfy the probable cause standard. Where, as in the case before the Court, probable cause is supported by an affidavit, "recital of sufficient underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp...." *Wellington v. State of South Dakota*, 413 F.Supp. 151, 154 (D.S.D.1976) (presentation of complaint drafted in the language of the Minnesota larceny statute and affidavit identifying one fugitive as the person who improperly received a check was held insufficient to support probable cause); *also see Kirkland v. Preston*, 385 F.2d 670 (D.C.Cir.1967) (affidavit submitted by Florida authorities in support of interstate extradition which alleged in conclusory statutory language that the defendants were guilty of second-degree arson was insufficient absent providing factual circumstances to support the charges). Based on the Warrant of Arrest and affidavit, this Court cannot issue a Certificate of Extradition to the Secretary of State.

Gunther Lehming has provided to this Court a copy of Udo Groner's report prepared as bankruptcy trustee for Depro GmbH. This report provides additional factual information regarding the aforementioned contracts and describes the findings of Groner's investigation. As to the contracts, Groner's report mentions the April 1, 1991 sub-licensing agreement identified in the Warrant of Arrest. The report states:

[o]n April 1, 1991, an "under license contract" was signed between the bankrupt corporation and Serical France. On the basis of this licensing contract, Serical France became the "sole authorized agent over the German patent" (belonging to the bankrupt corporation), [illegible] the bankrupt corporation transferred use of its own patent. In exchange, the bankrupt corporation agreed to pay a licensing fee of .20 DM for every proof made using the patent process. Payment was to be made to Mr. Gunther Lehming and Mr. Kuppers,[20] each receiving .10 DM per proof.

Lehming Ex. 1 at 31.

The agreement transfers all licensing rights from Depro GmbH to Serical for a patent owned by Depro GmbH. While Serical apparently receives the full benefit of the licensing fees, the agreement requires Depro GmbH to incur a liability by remitting a .20 DM licensing fee to Lehming and Kuppers each time the patent is licensed. As noted by Groner's report, the sub-licensing agreement raises interesting questions—particularly why is Depro GmbH, as holder of the patent, required to pay usufructuary rights for the use of its own patent? Lehming Ex. 1 at 32. In hindsight, the contract as described suggests fraudulent activity—particularly when Depro GmbH ultimately became insolvent. However, the Court is not convinced that the April 1, 1991 contract was intended to commit bankruptcy fraud. The contract must be viewed at the time it was entered into, and the Court cannot conclude that Depro GmbH was either in or on the brink of financial difficulties.[21] The report does not personally implicate Gunther Lehm-

---

**20.** Mr. Gerald Kuppers was an engineer who was a co-founder of the bankrupt corporation but left Depro GmbH in 1991 due to a disagreement with Gunther Lehming. Lehming Ex. 1 at 3.

**21.** In fact, the report lacks financial information regarding either Serical or Depro GmbH at the time the contract was entered into—information which may suggest fraudulent conduct or inti-

ing in the transaction, leaving the Court to speculate as to his involvement therein. Finally, the report does not identify Groner's source of information so that an independent determination can be made regarding his conclusions.

The Warrant of Arrest also references a contract between Depro–Serical U.S.A. and Depro GmbH dated June 28, 1993. Groner's report also discusses such a contract and states

> [o]n June 28, 1993, [Depro GmbH] and DSU [Depro–Serical U.S.A.] signed a contract providing for the safeguarding of lithographs and artwork. . . . Regardless of how one legally regards this contract—in the opinion of the creditors and the undersigned, no authority can be derived from this contract—DSU is, therefore, unable to make any claims based upon this contract because the DSU debt claims are derived from one of its loans for capital replacement, with the consequence that even the safety measures established for this contract share the same legal fate.

Lehming Ex. 1 at 8.

This contract is a security agreement covering lithographs and artwork belonging to Depro GmbH which transfers possession of the property to Depro–Serical U.S.A. upon the German entity's insolvency. Again, as with the April 1, 1991 contract, neither of the Government's submissions or Groner's report provide sufficient facts to support a finding of probable cause. The Court can only speculate that Depro GmbH was in financial peril at the time this contract was made. In addition, although Groner and the creditor's committee are convinced that the contract is unenforceable, this conclusion does not imply fraudulent action. Finally, the Court is not

provided any detail as to how Groner was involved in the transaction. Based upon the information presented, the Court cannot conclude Gunther Lehming acted in a fraudulent manner.

The final three contracts identified in the Warrant of Arrest—an agreement between Elkap and Depro GmbH dated April 30, 1994, a contract between Elkap and Depro GmbH dated February 25, 1994, and a contract between Serical and Depro GmbH dated June 28, 1993—are not specifically identified in Groner's report.[22] In fact, the agreement between Elkap and Depro GmbH dated April 30, 1994 is not mentioned in the report.

The Court is not provided sufficient factual information regarding the subject matter of the contracts, the method by which liabilities were fictitiously increased, or the benefit derived therefrom. In addition, Lehming's alleged involvement, knowledge, and/or acquiescence is not discussed. While bankruptcy fraud is commonly proven by circumstantial evidence, the Government has not provided sufficient factual evidence supporting the claim that the contracts at issue fictitiously increased liabilities of Depro GmbH.

## CONCLUSION

Due to a lack of probable cause to believe Gunther Lehming committed the crimes for which he is accused, this Court will not issue a Certificate of Extradition to the Secretary of State recommending Gunther Lehming be extradited to the Federal Republic of Germany.

---

mates a benign reason for the transfer of the patent.

**22.** The report identifies two contracts: one between Elkap and Depro GmbH dated February 25, 1993 and another between Serical and Depro GmbH dated June 28, 1992. Both are dated one year prior to the contracts referenced in the Warrant of Arrest. The Elkap contract was a trust agreement creating in Elkap an interest in various items in the possession of Depro GmbH. The contract stated:

> [i]f Depro fails to meet its payment obligations to Elkap, Elkap is authorized to immediately

appropriate the machines, or store them at another location. Regarding equitable conversion, Elkap is authorized to sell the machines . . . Elkap is also authorized to appropriate the machines after calculating their worth against the residual claim amount.

Lehming Ex. 1 at 8–9.

The contract between Serical and Depro GmbH dated June 28, 1992 was to protect artwork held by Depro. Lehming Ex. 1 at 11. This contract is said is to be identical to the contract between Depro GmbH and Depro–Serical U.S.A. dated June 28, 1993.