**Vincenzo MELIA, Appellant,**

**v.**

**UNITED STATES of America and William F. Smith, Attorney General, Appellees.**

**No. 374, Docket 81–2267.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1981.

Decided Dec. 16, 1981.

Maurice Edelbaum, New York City (Alan Scribner, and Fisher & Fraser, New York City, on the brief), for appellant.

Richard Blumenthal, U. S. Atty., New Haven, Conn. (Richard D. Gregorie, Atty., U. S. Dept. of Justice, New Haven, Conn., on the brief), for appellees.

Before FEINBERG, Chief Judge, and TIMBERS and MESKILL, Circuit Judges.

TIMBERS, Circuit Judge:

The essential issue on this appeal is whether appellant was properly ordered extradited from the United States to Canada to face charges of conspiring to commit a murder and of procuring a murder. We hold that he was.

Appellant Vincenzo Melia is a citizen of Italy and a resident of Connecticut. On May 16, 1981 he was arrested by FBI agents pursuant to an arrest warrant issued by a United States Magistrate in Connecticut. This warrant was issued pursuant to a formal request by Canada to the United States that Melia be extradited under the Treaty on Extradition between the United States and Canada, 27 U.S.T. 983, as amended March 22, 1976 ("the Treaty"). Canadian arrest warrants had charged Melia with conspiracy to murder or to have another murdered, and of counselling, procuring, or inciting another to murder.

At the extradition hearing, held on June 4 and 5 and July 2, 1981 in the District of Connecticut, T. F. Gilroy Daly, *District Judge*, the government presented evidence to show that Melia had conspired with others to murder a woman in Connecticut. In an opinion filed July 20, 1981, Judge Daly granted the extradition request.

Appellant then filed in the District of Connecticut a petition for a writ of habeas corpus to challenge the finding of extraditability. This was denied, Warren W. Eginton, *District Judge*, in an opinion filed July

31, 1981. From the order entered on this opinion, the instant appeal has been taken.

We affirm.[1]

# I.

## FACTS

The government's evidence at the extradition hearing showed that Melia and others conspired between February 1 and February 23, 1981 to murder Helen Nafpliotis, the girlfriend of Melia's brother. At a meeting held in Toronto, Canada, Cosmo Commiso, head of a reputed organized crime family, hired Cecil Kirby (a/k/a Jack Ryan) to perform the murder. Kirby, as it turned out, was an informant for the Royal Canadian Mounted Police. He informed Canadian officials of the planned murder.

Antonio Romeo was to act as liaison between Commiso and Kirby. The latter went to the United States after the Toronto meeting. Bad weather prevented Romeo's flight from landing, as planned, in New York so that he could meet with Kirby in Darien, Connecticut. Kirby thereupon called Commiso from Connecticut. Shortly thereafter, Kirby received a telephone call from an unidentified man who informed him that the next meeting with Romeo and others would be that night, that is, February 21, 1981. Judge Daly found that Melia had called Commiso in Canada.

That evening, Kirby met Romeo and Melia at one of the rare bars in Darien. They gave Kirby expense money and $1000. Melia gave Kirby his telephone number. They discussed the details of the planned murder. Melia promised Kirby an additional $1000 if he made certain that Nafpliotis's body was not found. Nafpliotis was warned by the FBI and was not injured.

1. In the past, with respect to certain other offenses, extradition from Canada to the United States has encountered thorny problems. Timbers & Pollack, *Extradition From Canada To The United States For Securities Fraud: Frustration Of The National Policies Of Both Countries*, 24 Fordham L.Rev. 301 (1955).

# II.

## EXTRADITION PROCEEDINGS

An extradition hearing is not the occasion for an adjudication of guilt or innocence. Rather, its purpose is to determine whether there is reasonable ground to believe that the person whose extradition is sought is guilty, that is, whether there is sufficient evidence to justify extradition under the appropriate treaty. *Simmons v. Braun*, 627 F.2d 635, 636–37 (2 Cir. 1980); *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2 Cir.), *cert. denied*, 429 U.S. 833 (1976). The Federal Rules of Criminal Procedure are expressly inapplicable to extradition proceedings, Fed.R.Crim.P. 54(b)(5), as are the Federal Rules of Evidence, Fed.R.Evid. 1101(d)(3). Hearsay and other excludable evidence, therefore, may be admissible. *See United States ex rel. Klein v. Mulligan*, 50 F.2d 687, 688 (2 Cir.), *cert. denied*, 284 U.S. 665 (1931).

Review in this case has been sought from the denial of a petition for a writ of habeas corpus. The scope of such review is limited and should not be converted into a de novo review of the evidence. *Jhirad v. Ferrandina, supra*, 536 F.2d at 482. Rather, the inquiry in the habeas corpus proceeding is limited to whether the judge who conducted the extradition hearing had jurisdiction to do so, whether the extradition court had jurisdiction, whether the alleged offense was covered by an extradition treaty, and whether the extradition judge was presented with evidence which warranted a finding that there was reasonable ground to believe that the accused was guilty.[2] *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Simmons v. Braun, supra*, 627 F.2d at 637. Here, appellant does not challenge the jurisdiction of the extradition judge or of the extradition court.

2. A finding of extraditability does not leave appellant vulnerable to being charged with any crime with which the Canadian authorities may choose to charge him. Rather, the principle of specialty is applicable: appellant can be charged only with those crimes for which he was extradited specifically. *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2 Cir.), *cert. dismissed*, 414 U.S. 884 (1973).

## III.

## CANADIAN JURISDICTION

Appellant argues that Canada has no jurisdiction over the conspiracy charge. He claims that his case does not fall within the relevant provisions of the Canadian Criminal Code which set forth the circumstances under which Canada has jurisdiction in murder cases. Section 423(3) provides that Canada has jurisdiction when someone within Canada conspires to kill someone outside of Canada. Section 423(4) provides that Canada has jurisdiction when someone outside of Canada conspires to kill someone within Canada. Appellant contends that, since he is charged with conspiring outside of Canada to kill someone outside of Canada, Canada has no jurisdiction. We disagree.

Although no Canadian case directly in point has been brought to our attention,[3] it appears that Canadian courts would hold that there is jurisdiction over appellant. Section 423(1)(a) of the Canadian Criminal Code appears to be applicable: "[E]very one who conspires with any one to commit murder or to cause another person to be murdered, whether in Canada or not, is guilty of an indictable offense . . . ." Although the statute provides for jurisdiction over all conspiracies to murder wherever they may occur, the Canadian government agrees that there must be some nexus with Canada and asserts that there is.

■ We agree that there is such a nexus. Melia conspired with persons who were in Canada. Moreover, there is strong circumstantial evidence that he made one or more telephone calls to Commiso in Toronto. Thus, even though he did not enter Canada, we hold that his conduct had a sufficient nexus with Canada to justify Canada's exercise of jurisdiction.

In any event, it is not mandatory that we decide whether Canadian courts have jurisdiction. "We are . . . not expected to become experts in the laws of foreign nations." *In re Assarsson*, 635 F.2d 1237, 1244 (7 Cir. 1980), *cert. denied*, 451 U.S. 938 (1981); *accord, Jhirad v. Ferrandina, supra*, 536 F.2d at 484–85 ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based."); *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 928 (2 Cir. 1974) (requesting country's internal legal procedures will be examined only when they are antithetic to a federal court's sense of decency); *Gallina v. Fraser*, 278 F.2d 77, 79 (2 Cir.) (same holding as in *Bloomfield, supra*), *cert. denied*, 364 U.S. 851 (1960); *see generally Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Rosado v. Civiletti*, 621 F.2d 1179, 1195–97 (2 Cir.), *cert. denied*, 449 U.S. 856 (1980). Melia will have the opportunity before the Canadian courts to challenge Canada's jurisdiction over him. We have the utmost confidence that the Canadian courts will decide the jurisdictional issue correctly.

■ Moreover, Article 3, Section 3, of the Treaty provides that when the act takes place outside of the requesting country the requested country has the power to grant extradition if the laws of the requested country provide for jurisdiction over such an offense committed in similar circumstances. Thus, if the United States would have jurisdiction over appellant had he been in Canada conspiring with persons in the United States, appellant can be extradited to Canada.

■ The United States would have jurisdiction in such a case. Justice Holmes stated the rule in *Strassheim v. Daily*, 221 U.S. 280, 285 (1911): "Acts done outside a jurisdiction, but intended to produce and

---

**3.** The case most nearly in point is *Re Chapman*, 5 [1970] Can.Crim.Cas. 46 (Ct.App.Ont.1970). There, Canadian citizens began a scheme within Canada to defraud persons exclusively outside of Canada. The court held that there was jurisdiction, but on grounds that the court said made it unnecessary to decide whether the formation or existence of the conspiracy in Canada was a sufficient foundation upon which to charge the commission of an offense in Canada. *Id.* at 50–51.

producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect ....." Here, Melia was part of a conspiracy, several members of which were in Canada. The mere presence of a conspiracy within Canada has a detrimental effect within Canada. Melia, moreover, in making one or more telephone calls performed acts within Canada in furtherance of the conspiracy.[4] Such a situation would be sufficient to give the United States jurisdiction in a similar case. In *United States v. Padilla*, 374 F.2d 996, 998 (2 Cir. 1967), for example, we held that it was proper to convict if an overt act pursuant to a conspiracy occurred within the jurisdiction of the court, even though the main conspiracy took place elsewhere.

## IV.

### THE TREATY

 Under the extradition treaty, murder is a listed extraditable offense. Article 2, Section 2, of the Treaty provides that "[e]xtradition shall be granted for ... *conspiracy* to commit or *being a party to* any of the offenses listed" (emphasis added). Thus the issue is whether appellant's alleged acts—conspiring to murder and procuring a murder—fall within this language. We hold that they do.

The Treaty does not specifically list procuring as an extraditable offense. We hold, nevertheless, that the Treaty does cover the offense. First, the Treaty provides that extradition shall be granted with respect to a person who is a party to one of the listed offenses. One who procures a murder is a party to it and therefore is subject to extradition under the Treaty. Second, Canadian and American law both treat procurers as principals, thus indicating that procuring is a serious crime that is within the Treaty.

Specifically, under Section 442(a) of the Canadian Criminal Code, one who procures another person to commit an indictable offense, although it is not actually committed, is guilty of an indictable offense to the same extent as one who attempts to commit the crime. Article 2, Section 2, of the Treaty expressly provides for extradition in cases of attempt. Thus, since procuring is the equivalent of attempting under Canadian law, we hold that procuring is covered by the Treaty.

Likewise, under 18 U.S.C. § 2(a) (1976), one who procures the commission of an offense against the United States is punishable as a principal. Because procurers are treated as principals under United States law, we hold that the Treaty covers procurers and allows them to be extradited.

 Furthermore, in view of the testimony concerning Melia's active role in planning and paying for the murder, we hold that the district court correctly found that there was probable cause that appellant is guilty of the crime of procuring murder.

With respect to the charge of conspiracy, the Treaty expressly covers that charge. There was sufficient evidence that Melia was involved in a criminal conspiracy some of whose members were in Canada. The district court correctly found that appellant was extraditable on the conspiracy charge.

We hold that the district court properly denied the petition for a writ of habeas corpus. We order that the mandate issue forthwith.

Affirmed.

---

**4.** An overt act need not be criminal to satisfy the overt act requirement. *United States v. Winter*, 509 F.2d 975, 982 (5 Cir.), *cert. denied*, 423 U.S. 825 (1975) ("An overt act, seemingly innocent in itself yet in furtherance of the conspiracy, is sufficient under the law of conspiracy.").

The situation in the instant case is distinguishable from cases such as *United States v. Columba-Colella*, 604 F.2d 356 (5 Cir. 1979). There, the court held that, where appellant's act in Mexico was legally unrelated to a crime by another person in the United States, the United States did not have jurisdiction. Here, appellant's contact with Canada was in connection with the same crime: the conspiracy to murder and the procurement to murder.