In the Matter of the EXTRADITION
OF Stefan PLATKO.

CASE NO. 02mg0798–LAB.

United States District Court,
S.D. California.

July 26, 2002.

Benjamin J. Coleman, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant.

Patrick K. O'Toole, U.S. Attorneys, by Christopher P. Tenorio, Assistant United States Attorney, San Diego, CA, for the Government.

## MEMORANDUM DECISION DENYING CERTIFICATION OF EXTRADITABILITY

BURNS, United States Magistrate Judge.

This matter is before the court on a request from the government of the Czech Republic for the extradition of Stefan Platko ("Platko") pursuant to the Extradition Treaty between the United States of America and Czechoslovakia of July 2, 1925 and the Supplementary Treaty of August 28, 1935 (collectively "Treaty"). On April 4, 2002, the United States Attorney filed a Complaint For Arrest With A View Towards Extradition Pursuant To Title 18 U.S.C. § 3184. On April 4, 2002, Magistrate Judge Ruben B. Brooks issued a warrant for Platko's arrest. Dkt No. 5. Platko was taken into custody on April 10, 2002.[1] On June 17, 2002, Platko, represented by counsel, filed a Response And Opposition To Government's Extradition Request. Dkt No. 13. On July 1, 2002, the government filed a Response And Opposition To Platko's Memorandum. Dkt No. 17. On July 5, 2002, Platko filed a Reply Memorandum.

On July 9, 2002, this court held a hearing on the extradition request as required under 18 U.S.C. § 3184. Christopher P. Tenorio, Esq. appeared on behalf of the government. Benjamin L. Coleman, Esq. appeared on behalf of Platko, who was present at the hearing. After careful consideration of the papers, the record pre-

---

1. On June 25, 2002, the undersigned Magistrate Judge set Platko's bail at $250,000. Dkt No. 16. Platko has remained in custody since his arrest.

sented, arguments of counsel, and legal authority, the court finds the government has not provided certain evidence required to be presented under the Treaty and has not met its burden to establish probable cause. Accordingly, the court *DENIES CERTIFICATION OF EXTRADITABILITY.*

## I.

The Prague Municipal Court issued a warrant for Platko's arrest dated July 21, 1998 ("Warrant" or "the Warrant"). Def.'s Resp. and Opp'n Ex. "D". Two Czech Republic indictments, dated February 28, 1995 and May 2, 1995, and the Warrant based on the indictments, have been provided in support of the extradition certification request. *Id.*, Exs. "B", "C". The February 28, 1995 indictment names Platko only; the May 2, 1995 indictment charges Platko and two co-defendants who purportedly confessed and implicated Platko. Platko is wanted in the Czech Republic on fraud and embezzlement charges arising out of his business dealings there in 1992 and 1993. The Warrant charges Platko with two counts of fraud, in violation of Article 250, Paragraphs One and Four of the Czech Criminal Code, and one count of fraud and embezzlement, in violation of Article 248, Paragraphs One and Two of the Czech Criminal Code. *Id.*, Exs. "B", "C", "D".

From the documents lodged with the court in support of the extradition request, the following facts emerge: During the early 1990s, Platko was a businessman in Prague involved in the purchase and sale of industrial goods and foodstuffs. The February 28, 1995 indictment and the Warrant identify eleven discrete and allegedly fraudulent transactions from January 1992 through July 1993 by date, place, goods acquired, and invoice numbers. Platko allegedly acquired goods such as cigarettes, alcoholic beverages, food, and clothing, without intention to pay for them.

Def.'s Resp. and Opp'n, Exs. "B", "D". For five of the transactions, the Warrant states that "he has not paid" the issued invoices, and for three others that he "has not settled" the invoices, from which it could be inferred either he made no payments or he paid some but not all of the amounts owed. For the remaining three transactions, the accusations state Platko actually made partial payments. With respect to the fraud and embezzlement charge, Platko allegedly leased a facsimile machine on February 3, 1993, did not make the lease payments; then in April 1993, he gave the machine to a third party as security for a loan which he did not pay back, thus misappropriating the machine. *Id.* The charges recite the machine had been "entrusted to him that belonged to another person" and he "misled another person to the detriment of the property of this person . . . ." *Id.*

The May 2, 1995 indictment and the Warrant identify seven discrete and allegedly fraudulent transactions in which Platko purportedly acted in concert with the two co-defendants in August, September, and December 1993. They allegedly acquired goods such as brake disks, foodstuffs, beer, tires, coffee, and tickets and were involved in two allegedly fraudulent loan transactions. Def.'s Resp. and Opp'n, Exs. "C", "D".

The Warrant recites that "a main hearing on the matter" had been ordered for November 18 and 21, 1996, that Platko "personally received the summons on 25 September 1996," that he did not appear at the hearing, and that thereafter he could not be found. Def.'s Resp. and Opp'n Ex. "D", p. 7. The Warrant also states that a warrant for Platko's arrest was issued on December 17, 1996, "which is still valid." *Id.* No transcript of the hearing nor any affidavit in support of the facts recited in the charging documents has been provided as part of the record.

The Warrant also states Czech Republic police reported on July 20, 1998 that Platko was residing in the United States, having come here in October 1996 on a tourist visa that was valid for six months. He married a United States citizen—allegedly to obtain permanent residence in the U.S.—and had since divorced. *Id.*, pp. 7–8. The Warrant issued on July 21, 1998. In reliance on the Treaty (Def.'s Resp. and Opp'n Ex. "A"), the Czech Republic has formally requested Platko's extradition to answer the charges specified in the Warrant.

As provided in 18 U.S.C. § 3184,[2] the United States government seeks certification of Platko's extraditability from this court. The government's evidence is comprised of:

(1) Certification from the Consul of the United States at Prague that the annexed photograph of Platko and statement by Presiding Judge Hodousek of Platko's identity as the Czech citizen against whom the July 21, 1998 warrant issued are properly and legally authenticated "so as to entitle them to be received in evidence" for the extradition application;

(2) Certification from the Consul of the United States at Prague that the annexed Arrest Warrant is properly and legally authenticated "so as to entitle them to be received in evidence" for the extradition application;

(3) Certification from the Consul of the United States at Prague that the annexed May 2, 1995 Indictment is properly and legally authenticated "so as to entitle them to be received in evidence" for the extradition application;

(4) Certification from the Consul of the United States at Prague that the annexed February 28, 1995 Indictment is properly and legally authenticated "so as to entitle them to be received in evidence" for the extradition application; and

(5) A January 5, 2001 sworn Declaration of Kenneth Propp, Attorney Advisor in the Office of the Legal Advisor for the Department of State, Washington, D.C. An authentication by the Secretary of State certifies Mr. Propp was, at the time of executing his Declaration, the person in the position he represents himself to be. Mr. Propp declares his office has responsibility for extradition requests, and he is charged with the extradition of Platko. He makes the following statements, among others, "based on my personal knowledge and upon information made available to me in the performance of my official duties":

a. Pursuant to the "extradition treaties in full force and effect between the United States and the Czech Republic," the Embassy of the Czech Republic submitted a

**2.** "Whenever there is a treaty or convention for extradition between the United States and any foreign government, ... any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, ... issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, ... he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." 18 U.S.C. § 3184.

request with documents in support of Platko's extradition;

b. A representation that "[i]t is the view of the Department of State that both Treaties [the July 2, 1925 treaty and the supplemental treaty entered August 28, 1935] remain in effect with ... the two successor States to the former Czechoslovakia" and noting Treaty copies attached;

c. "The offenses for which Mr. Platko's extradition is sought is covered by Article II of the 1925 Extradition Treaty as amended by the 1935 Supplemental Treaty;"

d. The documents submitted by the Czech Republic were certified by the Consul General at the United States Embassy in Prague on November 28, 2000, "in accordance with 18 U.S.C. 3190."

(6) A copy of the "diplomatic note" requesting extradition, attached to Mr. Propp's Declaration.

No other papers, affidavits, declarations, or any testimonial transcripts have been provided in the record in support of extradition certification.

Platko opposes extradition, on grounds: (1) the Treaty does not exist between the new Czech Republic and the United States; (2) even if the Treaty were valid and enforceable, the Czech Republic has not produced depositions in support of the Warrant as required under Article XI of the Treaty; (3) only unsworn allegations have been produced to establish probable cause, an insufficient basis to issue an extradition warrant under Articles I and XI of the Treaty and under the Fourth Amendment of the United States Constitution; (4) the offenses charged are not covered by the Treaty; (5) the "dual criminality" requirement is not met with respect to the fraud charges; (6) impermissible post-indictment delay under the Sixth Amendment to the United States Constitution; and (7) 42 U.S.C. § 3184 is unconstitutional under the separation of powers doctrine because it allows the executive to revise court judgments. Def's Resp. and Opp'n.

With respect to the existence of an extradition treaty between the Czech Republic and the United States, Platko argues in support of his invalidity argument: the foreign government that entered the Treaty in 1926 has ceased to exist; the treaty was extinguished when Czechoslovakia split into two countries in the early 1990s; and the Senate never consented to the "current application" of the Treaty. In part because resolution of this issue is not critical to the disposition of the government's extradition request, the court rejects Platko's arguments that no valid treaty is in force and assumes for purposes of this decision the Treaty is in force and effect.[3]

---

3. The continuing validity of treaties after a change in the status of a country "presents a political question," and courts "must defer to the intentions of the State Departments of the two countries" with respect to whether a particular treaty remains in force. *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir.1996), citing, *inter alia*, *Arnbjornsdottir–Mendler v. United States*, 721 F.2d 679, 681 (9th Cir.1983); *see also Matter Of Extradition Of Tuttle*, 966 F.2d 1316 (9th Cir.1992) (finding the Bahamas could and did adopt an extradition treaty originally entered by the United States and the United Kingdom when the Bahamas became an independent nation by accepting the agreement), citing *Restatement of the Foreign Relations Law of the United States* § 210(3) ("When part of a state becomes a new state, the new state does not succeed to the international agreements to which the predecessor state was a party, *unless,* **expressly or by implication, it accepts such agreements and the other party or parties thereto agree or acquiesce**"). Although the *Treaties In Force* publication lists the Treaty at issue here as "under review," the Propp Declaration substantiates the United States deems the Treaty is in effect, and attaches the Czech Republic's extradition request relying on the Treaty. In addition, the government provides a copy of a January 1993 statement of intent from the

**1234**

With respect to Platko's separation of powers argument, Platko acknowledges that the argument was squarely rejected in *Lopez–Smith v. Hood,* 121 F.3d 1322, 1327 (9th Cir.1997) (finding the Secretary of State's discretion to review the court's judgment of extraditability does not violate the separation of powers doctrine). *See* Def.'s Resp. and Opp'n 19:27–28; *see also* discussion in *Matter Of Extradition of Artt,* 158 F.3d 462 (9th Cir.1998), *opinion withdrawn on grant of rehearing, In re Requested Extradition of Artt,* 183 F.3d 944 (9th Cir.1999), *redesignated in In re Artt,* 248 F.3d 1197 (9th Cir.2001), citing *DeSilva v. DiLeonardi,* 125 F.3d 1110, 1113 (7th Cir.1997). This court is bound by *Hood* and therefore rejects Platko's separation of powers argument.

 Platko further argues that the extradition request should be denied because of alleged post-indictment delay. The effect of post-indictment delay is an equitable consideration. The court finds that the issue should be decided by the Secretary of State, who makes the decision whether actually to extradite. This court's role is limited to determining whether the accused should be certified as extraditable because there is competent legal evidence to justify holding the accused for trial.[4] *Matter of Extradition of Russell ("Russell"),* 789 F.2d 801, 802 (9th Cir.1986). The purpose of the hearing on the extradition request is to consider "the evidence of criminality." 18 U.S.C. § 3184. "The magistrate's function is merely to determine whether there is 'any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Russell,* 789 F.2d at 802, quoting *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925). The court does not look to the merits of the charged crimes. Accordingly, the court denies Platko's motion to dismiss the extradition petition for alleged post-indictment delay.

The parties do not dispute that Platko is currently detained pursuant to a valid arrest warrant from this jurisdiction. They do not dispute the validity of the Czech Republic's Warrant upon which the extradition request is based. They do not dispute the identity of Platko as the person named in those warrants. The dispositive issue before this court is thus whether the evidence presented in support of extradition is competent and sufficient to establish probable cause that Platko committed

Prime Minister of the Czech Republic addressed to then—President Bush expressing his country's intention to continue to abide by Czechoslovakia's treaties with the United States. Response And Opposition To Platko's Memorand[um], Ex. "A". The court notes as further indicia that the Treaty continues in operation that both the Czech Republic and the United States have proceeded in this and other cases since the formation of the Czech Republic, as evidenced by certain extradition decisions available through Westlaw, as if the Treaty is in full force and effect; and neither country appears ever to have given the other the notice of intent to withdraw or annul the Treaty in accordance with the process described in the Treaty itself.

4. The court nevertheless notes the considerable lapse of time between the indictments and

the request to extradite: the alleged criminal conduct occurred in 1992 and 1993; the first indictment of record is dated February 1995; some kind of hearing on the charges was set for November 18 and 20, 1996; Platko's failure to appear then resulted in a December 1996 warrant for his arrest; the Warrant for extradition purposes did not issue until August 1998; the certification of the documents provided in support of the extradition request were not authenticated and transmitted until November 2000; the Czech embassy in Washington, D.C. officially requested extradition on December 23, 2000; the Secretary of State certified the documents on January 5, 2001; and the United States Attorney did not file the Complaint For Arrest for extradition until April 4, 2002.

the charged crimes. As the court finds the evidence is deficient, the court declines to certify Platko as extraditable on this record.

## II.

Statutorily, "any judge of the United States" may hear extradition cases.[5] "If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under [18 U.S.C.] section 3181(b), he shall certify the same ... to the Secretary of State ... and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." 18 U.S.C. § 3184.

■ "In order for this court to certify [a person's] extraditability, the government must establish: (1) the existence of a warrant for [the person's] arrest; (2) the existence of a treaty providing for extradition for the charged offense for which the warrant was issued; (3) that [the person sought to be extradited] is the person named in the warrant; (4) that there is probable cause to believe that [the person] committed the offense[s] charged; and (5) that the facts alleged would also constitute an offense in the United States (dual criminality)." *Petition of France for Extradition Of Sauvage ("Sauvage")*, 819 F.Supp. 896, 897 (S.D.Cal.1993).

The Treaty provides in Article I (emphasis added):

It is agreed that the Government of the United States and the Government of Czechoslovakia shall, upon requisition duly made as herein provided, deliver up to justice any person, who may be charged with, or may have been convicted of **any of the crimes or offenses specified in Article II of the present Treaty** committed within the jurisdiction of one of the High Contracting Parties, and who shall seek asylum or shall be found within the territories of the other; **provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.**

Extraditable crimes must be "treaty offenses." The court must inquire whether the charged crime(s) fall within the scope of particular treaty language. *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir.1986). The Treaty in this case provides that the extradition obligation attaches to "any of the crimes or offenses specified in Article II ...." [6] Treaty Art. I.

■ Two embezzlement offenses are described in Article II of the Treaty. Article II § 15 describes "[e]mbezzlement **by any person or persons, hired salaried or employed, to the detriment of their employers or principles ...,**" and Article II § 14 describes "[e]mbezzlement or criminal malversation ... **by public officers or depositaries....**" Platko is not accused as a "public officer[ ] or depositarie[ ]," nor is he charged with causing detriment to his "employers or principles." The Warrant and indictments do not allege, nor do they

---

**5.** 18 U.S.C. § 3184 authorizes a broad class of judicial officers to hear extradition cases, expressly including magistrate judges. *See* n. 1 above; *Matter of Extradition of Mainero ("Mainero")*, 990 F.Supp. 1208, 1216 (S.D.Cal.1997). The parties do not dispute the jurisdiction of the undersigned Magistrate Judge to determine whether Platko is subject to surrender to the Czech Republic pursuant to the Treaty.

**6.** There appears to be no dispute that the minimum monetary value of misappropriated items required for an offense to qualify as a Treaty offense is satisfied with respect to all the Warrant charges against Platko.

permit the inference, that Platko's conduct falls under either of the "embezzlement" crimes as they are articulated in the Treaty. Comparing the embezzlement offenses within the scope of the Treaty and the embezzlement charges alleged in the Warrant, the court finds the fax machine misappropriation charges do not constitute a Treaty offense.

However, fraud and breach of trust by a bailee are extraditable offenses under the Treaty. Treaty Article II ¶ 20 provides for the extradition of persons charged with **"[f]raud or breach of trust by a bailee** ...." Treaty Article II, ¶ 18 provides for the extradition of persons charged with "obtaining money ... or other property by **false pretenses** or receiving any money ... or other property knowing the same to have been unlawfully obtained ..." Def.'s Resp. and Opp'n Ex. "A". These provisions may be interpreted broadly enough to cover all the charges alleged in the Warrant.

 In addition to finding a treaty offense, the determination of extraditability requires that the doctrine of "dual criminality" be satisfied. The charged conduct must be illegal in both the requesting and the requested nations. *Quinn*, 783 F.2d at 783. Dual criminality is "an essential element of the government's burden of proof to establish a basis for extradition." *Mainero*, 950 F.Supp. at 292, n. 1, citing *Sauvage*, 819 F.Supp. 896. The court need not find identical criminal statutes defining an offense, only conduct that would be a crime in both jurisdictions. *Mainero*, 950 F.Supp. at 294; *Bozilov. v. Seifert*, 983 F.2d 140, 142 (9th Cir.1992). "[S]o long as the acts charged in [the requesting country] constitute the commission of a crime in the United States, dual criminality is satisfied." *Matter Of Extradition of Lehming ("Lehming")*, 951 F.Supp. 505,

512 (D.Del.1996), citing, *inter alia, Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 66 L.Ed. 956 (1922) ("The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions"). The court may consider the law of the state in which the extradition hearing is held and federal law in making the dual criminality determination. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir.1981); *see Wright v. Henkel*, 190 U.S. 40, 61, 23 S.Ct. 781, 47 L.Ed. 948 (1903) (acts are considered criminal "in this country" if they would be unlawful under federal statutes, the law of the state where the accused is found, or the law of the preponderance of the states).

Applying dual criminality principles, the court finds the California Penal Code and the Czech criminal statutes both encompass the conduct alleged in the Warrant. The Czech Criminal Code, Article 248, reproduced in the Warrant as the basis for the accusations in the embezzlement count, provides, in pertinent part: "He who misappropriates a thing given into his care that belongs to another person and thus causes damage which is not insignificant will be punished by imprisonment for a period of up to two years or by a prohibition of activity or by a financial punishment or by the forfeiture of the thing." Def.'s Resp. and Opp'n Ex. "D", p. 5. A California law equivalent may be found at CAL.PENAL CODE § 503.[7] The fraud charges similarly satisfy the dual criminality doctrine. The Czech Criminal Code, Article 250, reproduced in the Warrant,

---

7. "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." CAL.PENAL CODE § 503.

provides: "He who gains wealth for himself or another person to the detriment of the property of others by misleading someone or by taking advantage of someone's mistake and thus causes damage which is not insignificant to the property of others will be punished by imprisonment of up to two years or a prohibition of activity or the forfeiture of the thing." Def.'s Resp. and Opp'n Ex. "D", p. 5. Equivalent offenses are codified in CAL.PENAL CODE §§ 484 [8] and 532.[9]

■ For the foregoing reasons, the court finds no bar to Platko's extradition based on the scope of the Treaty or the dual criminality doctrine. However, the court declines to certify Platko for extradition because it finds the evidence offered in support of probable cause lacks legal competency and reliability, as a consequence of which the court cannot on this record make an **independent** finding of probable cause.

■ "Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict." *Fernandez*, 268 U.S. at 312, 45 S.Ct. 541. Hearsay evidence is admissible to support a probable cause determination in an extradition hearing. *See Quinn*, 783 F.2d at 815; *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1451 (9th Cir.1987) ("In the Ninth Circuit,

it has been repeatedly held that hearsay evidence that would be inadmissible for other purposes is admissible in extradition proceedings"). However, the sufficiency of hearsay statements to support a finding of extraditability appears to require that the statements be vouched for in affidavits. *See, e.g., Emami*, 834 F.2d at 1450–51 (hearsay statements summarized in German prosecutor's affidavit in support of extradition was properly authenticated and competent evidence under United States extradition law).[10] The *Emami* court found that *because* the prosecutor's affidavit was authenticated and sworn by the declarant, the hearsay statements summarized in it were admissible. *Emami*, 834 F.2d at 1451; *see also Then*, 92 F.3d at 855 (upholding a magistrate judge's finding of probable cause to certify extradition on the strength of *two affidavits,* one supporting an inference that extraditee knowingly participated in a bill of exchange fraud, and the second from an inspector describing an admission of an agreement to share proceeds of the fraud and an explanation of the accused's role in the fraud from an individual connected to the crimes for which the extradition was sought). In addition, Article XI of the Treaty requires not only "a duly authenticated copy of the warrant of arrest in the country where the crime was committed," but also appears to

8. "Every person who shall ... by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who ... causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property ... is guilty of theft...." CAL.PENAL CODE § 484(a).

9. "Every person who, knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, or who causes or procures others to report falsely of his or her wealth or mercan-

tile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, ... is punishable in the same manner and to the same extent as for larceny of the money or property so obtained." CAL.PENAL CODE § 532(a).

10. The court finds such verification is for *probable cause purposes and is distinguish-* able from the authentication of "[d]epositions warrants **or other papers or copies thereof** offered in evidence upon the hearing of any extradition case" to have **the documents** "received and admitted as evidence on such hearing ...." 18 U.S.C. § 3190 (emphasis added).

require sworn authentication of the underlying allegations ("**the depositions** upon which such warrant may have been issued, **shall be produced**"). The word "deposition" is commonly used to denote a statement that is made under oath before an examiner, commissioner or officer of the court.[11] The court thus construes the Treaty's reference to "depositions" as stating a requirement that statements offered in support of the Warrant be made under oath.

Relying on *Emami* and *Zanazanian v. United States,* 729 F.2d 624, 627 (9th Cir. 1984), and 18 U.S.C. §§ 3181–3195, the government argues the summaries of statements that were purportedly made by accomplices, and several witnesses and victims in the Complaint are taken "directly from summaries of testimony provided by the Czech Republic" and consequently should be "competent and sufficient evidence." Def.'s Resp. and Opp'n to Platko's Mem. pp. 3–4. The Ninth Circuit Court of Appeals has held that self-incriminatory statements of accomplices are sufficient to establish probable cause in an extradition hearing. *See Zanazanian,* 729 F.2d at 628. However, the "summaries" of statements in support of the criminal charges in the Czech Republic's indictments and Warrant are not authenticated.

 In contrast to *Emami,* where the summaries were presented in a sworn and authenticated affidavit, the government here relies on the authentication of the Czech Republic **documents** by the transmitting Consul. Authentication of documents not themselves sworn does not suffice to establish a foundation for the factual content asserted in the documents. The papers presented in support of Platko's extradition contain no affidavit, declaration, or other form of sworn statement by any person with knowledge of the un-

derlying facts to support the Czech Republic charging papers, or even certifying the representations contained therein were actually made as recorded there.

The *Zanazanian* court held that the decision to extradite a detainee must be based on competent evidence that would suffice under United States law to hold a defendant for trial, that is, establishing probable cause to believe that the accused committed the crime charged, in that case, narcotics offenses in Sweden. The documents used at the extradition hearing in that case included police reports of interrogations of suspects involved in the same narcotics activities. *Zanazanian,* 729 F.2d at 625. The police reports were third person accounts of what the suspect said, and the reports were not sworn or signed by either the suspect or the interrogating officers. *Id.* However, unlike the record presented here, that evidence included the record of the court proceedings in the requesting country which led to the warrant for Zanazanian's arrest. The record also included the prosecutor's declaration, under oath, that the contents of his statements supporting the request for extradition were true representations of the investigation results. *Id.* No comparable authenticating declaration supports the contents of the indictments or the Warrant in Platko's case.

In addition, the treaty language in *Zanazanian* is distinguishable from the Treaty here. The *Zanazanian* court found "[n]either the applicable treaty nor United States law requires that evidence offered for extradition purposes be made under oath." *Zanazanian,* 729 F.2d at 627, 628 ("Although the accomplice statements in *Curreri [v. Vice,* 77 F.2d 130, 132 (9th Cir.1935)] were sworn, that should not make a difference *absent an oath require-*

---

**11.** Blacks Law Dictionary 512 (4th ed.1968). The term deposition is also "used as synony-

mous with 'affidavit' or 'oath' 'and to denote'[a] written declaration under oath." *Id.*

*ment in the treaty* " (emphasis added)). A provision in the *Zanazanian* treaty regarding admissibility of evidence did not require that witnesses' statements be under oath. As the *Zanazanian* court recognized: "The [Sweden treaty] provision does not require that the submitted documents contain only statements made under oath. By contrast, other extradition treaties do require sworn statements." *Id.* at 627. The Treaty under which Platko's extradition is sought expressly states that when the person sought to be extradited is merely "charged with a crime," the evidence to be produced in support of the request must include not only "a duly authenticated copy of the warrant of arrest in the country where the crime was committed" but also *"of the depositions upon which such warrant may have been issued . . . ."* Treaty Art. XI. The absence of sworn declarations, not fatal in *Zanazanian* because there was no oath requirement, is a material deficiency in the evidence presented in this case according to the governing Treaty.

■ Finally, "[e]xtradition depends on probable cause to believe that petitioners committed an offense covered by the extradition treaty." *DeSilva,* 125 F.3d at 1112, citing *Bovio v. United States,* 989 F.2d 255, 258 (7th Cir.1993), *Eain v. Wilkes,* 641 F.2d 504, 507–08 (7th Cir. 1981). "To support a finding of probable cause under either federal or California law,[12] an affidavit must contain factual support for the affiant's conclusions and either an assertion that the affiant speaks from personal knowledge or a statement of the sources for the affiant's belief and the circumstances from which the affiant concluded that the sources were reliable and credible." *Sauvage,* 819 F.Supp. at 902–903 (citing, *inter alia, Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Campa,* 36 Cal.3d 870, 879–80, 206 Cal.Rptr. 114, 686 P.2d 634 (1984)).

To make the probable cause determination, "a judge is to review the evidence presented and make an independent determination that the accused committed the crimes alleged." *Lehming,* 951 F.Supp. at 514, citing *Giordenello,* 357 U.S. at 486, 78 S.Ct. 1245 ("[t]he commissioner must judge for himself the persuasiveness of the *facts relied upon by a complaining officer* to show probable cause. He should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime") (emphasis added). "This independent review allows a magistrate to perform a 'neutral and detached' function and not serve merely as a rubber stamp . . . ." *Lehming,* 951 F.Supp. at 514 (citation omitted).

Even when an affidavit is provided, the showing must identify the facts and go beyond conclusory characterizations. The *Lehming* court found that while the Warrant of Arrest in that case "provide[d] insight into the alleged crimes and identifies the [foreign] government's investigatory team and documentary evidence, it does not provide sufficient factual detail which allows this Court to conclude that probable cause exists." *Lehming,* 951 F.Supp. at 516. The *Lehming* court was able to "view the Warrant of Arrest *in conjunction with the affidavit* [of a bankruptcy

---

12. Under the terms of the Treaty, the test to determine whether probable cause has been shown is drawn from "the laws of the place where the fugitive or person so charged shall be found" and requires that the showing be such that "would justify [the person's] apprehension and commitment for trial if the crime or offense had been there committed." Def.'s Resp. & Opp'n Ex. "A", Art. I.

trustee with direct knowledge of the factual circumstances surrounding the bankruptcy fraud at issue] *to flesh out any facts which support the crimes charged." Id.* at 516, 517. Nevertheless, the affidavit failed to implicate Lehming personally in the alleged fraudulent activity. "The accusations in the Warrant of Arrest and [the affidavit] do not contain sufficient factual information to support a criminal charge." *Id.* "[C]onclusory statements do not satisfy the probable cause standard. Where, as in the case before the Court, probable cause is supported by an affidavit, 'recital of sufficient underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp....'" *Lehming,* 951 F.Supp. at 517 (citation omitted).

In Platko's case, no affidavits have been provided from which this court can "flesh out" the facts underlying the crimes charged to establish whether probable cause exists as to each required element. For example, the existence of unpaid invoices after receipt of goods may suggest, in hindsight, acquisition by fraud. However, in order for the court to make a probable cause finding of fraud, the government would have to come forward with some evidence that Platko harbored fraudulent intent at the time he entered into the contracts. Having carefully reviewed all of the offered evidence, the court finds that there is insufficient evidence to support the speculative conclusion in the indictments and Warrant allegation that Platko, upon entering into the contracts, "never intended to pay." The conclusory inference of an intent "never" to pay is further undermined by other allegations that Platko actually made partial payments on several of the transactions.

The February 28, 1995 Indictment refers to a "preparatory procedure" which entailed submission of "the necessary evidence ... that made it possible to make both factual and legal conclusions stated in the proposed conviction of the indictment." Def.'s Resp. and Opp'n Ex. "B", "Reasoning" section. Platko appears to have attended.[13] The prosecutor who prepared the indictment ("signature illegible") refers to "witnesses" who either "testified" or "stated" or "confirmed" facts regarding sales of goods to Platko for which he did not pay or only partially paid, and to Platko's accounting records, to conclude (Def.'s Resp. and Opp'n Ex. "B" (emphasis added)):

> According to the above described activity—when the accused bought the goods against invoices did not settle the in-

---

**13.** The "Reasoning" section of the indictment includes the paragraph: "The accused *Platko admits* the facts stated in the accusation of the indictment. He started doing business in early 1992. He took the goods against invoices that were sent to him. In some events he made payments in cash. In most cases he did not settle the invoices, as his customers did not pay for the delivered goods. Sometimes he made a profit on the sold goods, sometimes he sold the goods at the purchase price and sometimes he sold the goods under the purchase price. The profit he gained was used to purchase other goods because—if he had settled outstanding debts—he would have had to stop his business activities." Def.'s Resp. and Opp'n Ex. "B" (emphasis added). "As to the activity stated under ([Count] II), *the accused stated* that in early 1993, he became acquainted with Mical Carny and started doing business in an office they shared." *Id.* The two decided Carny would provide a fax machine and they jointly concluded the lease contract, with Carny signing the contract and Platko "affixing his stamp to the contract." *Id.* "The accused assumed that the installments would be continuously paid." *Id.* In April, Platko left the shared office and had to settle bills for phone charges and a leased car. In order to do so, he borrowed money from a Roman Novak, who wanted to be repaid within a month and wanted a guarantee. Hoping he could raise the money and settle the debt before the month was up, Platko "gave [Novak] the fax machine and emphasized that it was leased." *Id.*

voices and—*as it is clear from the circumstances*—had *never intended to do so*—he caused damage amounting to CZK 1,434,466.50 and committed a continuous crime of fraud according to Art. 250 Par.1, 4 of the Code. By such activity—when he used a fax machine leased from LUCRACO to secure the financial loan of 30,000 CZK, did not pay the lease installments and was aware of the fact that the facsimile machine as not his property and that he could not dispose of it freely as well of the fact that he was not able to settle the due amount by the fixed date—he committed the crime of embezzlement according to Art. 248 Par. 1,2 of the Criminal Code as well as fraud of the crime of fraud according to Art. 250 Par. 1,2 of the Criminal Code.

The court finds the prosecutor's conclusory opinion that "it is clear from the circumstances" that an essential element of a charged crime is satisfied is insufficient to establish probable cause to believe the accused is guilty of the charged crime. Similarly, the May 2, 1995 indictment refers to "the necessary evidence" having been presented and summarizes that evidence (Def.'s Resp. and Opp'n Ex. "C"), but neither indictment is accompanied for purposes of the extradition process by declarations of the witnesses as required under the Treaty,[14] nor any declaration even attesting to the accuracy of the evidentiary summaries. No verified description of the conditions and circumstances of the investigation or of witness examinations or any other indicia of reliability substantiating the allegations against Platko has been provided. Accordingly, the record lacks competent evidence from which this court can independently make a probable cause determination. *See Giordenello*, 357 U.S.

at 486, 78 S.Ct. 1245. Like the *Sauvage* court, this court concludes:

> While the [foreign court] may very well have made this [probable cause] finding based on sufficient evidence, this court cannot simply adopt that conclusion of guilt on the element of intent. The treaty ... requires this court to make an independent determination from the evidence as to probable cause including the existence of the element of criminal intent .... The government has simply failed to offer the evidence which supports the investigating magistrate's finding.

*Sauvage*, 819 F.Supp. at 903.

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1. There being an insufficient showing of probable cause and an absence of sworn statements to support the allegations in the Warrant, the present application of the Czech Republic to certify Platko for extradition is *DENIED,* without prejudice; and

2. Platko shall be discharged forthwith and the case closed.

**IT IS SO ORDERED.**

---

14. "[T]he depositions upon which such warrant may have been issued, shall be produced .... " Treaty Art. XI.