**In re: Jeffry Alejandro PENA–BENCOSME**

v.

**United States Attorney's Office for the Eastern District of New York, Defendant–Appellee.**

No. 08–1990–pr.

United States Court of Appeals, Second Circuit.

July 9, 2009.

Robert P. Larusso, LaRusso & Conway, LLP, Mineola, NY, for Plaintiff–Appellant.

Joanne Navickas, Assistant United States Attorney (Kathleen Naughton, Special Assistant United States Attorney, of counsel), for Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Defendant–Appellee.

PRESENT: ROGER J. MINER, DEBRA ANN LIVINGSTON, Circuit Judges, and DAVID G. TRAGER, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Jeffry Alejandro Pena–Bencosme appeals from a decision of the United States District Court for the Eastern District of New York denying his petition for a writ of habeas corpus in connection with his potential extradition to the Dominican Republic. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented for review.

Pena–Bencosme first contends that the Dominican Republic's selective presentation of evidence and, in particular, its withholding of a ballistics report relating to the gun of the alleged victim, off-duty police officer Santiago Fortuna Sanchez, obliterate probable cause to believe that Pena–Bencosme committed the crime of voluntary homicide, as defined under the law of the Dominican Republic. This argument is meritless. "An extradition hearing is not the occasion for an adjudication of guilt or innocence. Rather, its purpose is to determine whether there is reasonable ground to believe that the per-

---

* The Honorable David G. Trager, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

son whose extradition is sought is guilty...." *Melia v. United States,* 667 F.2d 300, 302 (2d Cir.1981). Here, it is clear that the Dominican Republic has presented sufficient evidence to establish probable cause to believe that Pena–Bencosme committed voluntary homicide. The ballistics and autopsy reports in the record indicate that, at the very least, Pena–Bencosme shot Fortuna Sanchez. The accounts of several eyewitnesses support the Dominican Republic's theory that, during the course of his fatal confrontation with Fortuna Sanchez, Pena–Bencosme shot first, did not act in self-defense, and was the cause of Fortuna Sanchez's death.

We recognize Pena–Bencosme has submitted additional testimony by some of these witnesses that calls into question the accuracy of the statements relied upon by the Dominican Republic. He has also presented the testimony of several other individuals who contend, contrary to the accounts relied upon by the Dominican Republic, that Fortuna Sanchez provoked the fatal confrontation with Pena–Bencosme, that Fortuna Sanchez shot first, and that Pena–Bencosme returned fire, if at all, only in self-defense. This evidence, however, does not affect our analysis. Review of a decision in an extradition hearing by means of a petition for a writ of habeas corpus "is limited and should not be converted into a de novo review of the evidence." *Id.* Instead, a court adjudicating such a petition may consider only "whether the [judge conducting the extradition hearing] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *see also Simmons v. Braun,* 627 F.2d 635, 637 (2d Cir.1980); *Shapiro v. Ferrandina,* 478

F.2d 894, 901 (2d Cir.1973). Given the limited nature of this review as well as the underlying requirement that a requesting country establish only probable cause, the existence of evidence contradicting or calling into question the requesting state's primary evidence ordinarily has no import as it does not vitiate or obliterate probable cause, but rather merely "pose[s] a conflict of credibility" that generally "should properly await trial in [the requesting country]." *Shapiro,* 478 F.2d at 905; *see also Barapind v. Enomoto,* 400 F.3d 744, 749–50 (9th Cir.2005); *Messina v. United States,* 728 F.2d 77, 80 (2d Cir. 1984) ("[A] fugitive may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country.").

Pena–Bencosme's allegations regarding the conduct of representatives of the Dominican Republic in this extradition proceeding also do not change this analysis. The initial affidavit submitted by the Dominican Republic in support of extradition accurately reproduces the content of the sworn statements given to the police by several witnesses. Some of these witnesses have since made conflicting statements as to what took place, but there is no substantial evidence in the record indicating that the original statements were coerced or otherwise fraudulently procured. Similarly, although there is some basis in the record for the inference that the Dominican Republic possesses a ballistics report relating to Fortuna Sanchez's firearm that, despite repeated requests, has not been produced in the course of this proceeding, any assertion that this report supports Pena–Bencosme's allegations or that the Dominican Republic has deliberately withheld it to obtain an improper extradition is purely speculative. Moreover, even if the hypothetical ballistics report in question does demonstrate that

684

Fortuna Sanchez's gun had been fired at some point in the course of the altercation in question, that fact, although in conflict with the full extent of some of the accounts presented by the Dominican Republic, would not vitiate testimony indicating that Pena–Bencosme had shot at Fortuna Sanchez before being fired upon and, accordingly, would not defeat a finding of probable cause.

██ Pena–Bencosme's assertion that the requirement of dual criminality is not satisfied is similarly unavailing. For purposes of this discussion, we assume, but do not decide, that the relevant extradition treaty, the Convention Between the United States and the Dominican Republic for the Extradition of Criminals, June 19, 1909, 36 Stat. 2468, imposes a requirement of dual criminality with regard to extradition for murder and voluntary manslaughter and that, under the law of the Dominican Republic, self-defense is not a complete defense to the crime of voluntary homicide but, rather, operates merely as a mitigating factor limiting the extent of the sentence that may be imposed on a defendant. The mere absence of a potential defense, however, does not establish the absence of dual criminality. Rather than looking merely to the statutory definition of the crime at issue, a court evaluating a question of dual criminality must "look[ ] towards the *conduct* of the accused to see if it falls within the proscription of American criminal law." *Lo Duca v. United States,* 93 F.3d 1100, 1112 (2d Cir.1996); *see also Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 66 L.Ed. 956 (1922) ("The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.").

In this matter, as discussed above, the Dominican Republic has presented sufficient evidence to establish probable cause to believe that Pena–Bencosme voluntarily killed Fortuna Sanchez and did not act in self-defense. Such an act is clearly criminal under the laws of the United States, the State of New York, and the Dominican Republic.

We have considered all of Pena–Bencosme's remaining contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.